**UNITED STATES of America for the use and benefit of ARMCO DRAINAGE & METAL PRODUCTS, Inc., Plaintiff,**

v.

**M. VANDER HEYDEN, d/b/a Dyer Construction Company and United States Fidelity and Guaranty Company, Defendants.**

**Civ. A. No. P–1958.**

United States District Court
S. D. Illinois, N. D.

Jan. 23, 1958.

2. More precisely the statute reads, as does the petition for removal herein, "exceeds the sum or value of $3,000." 28 U.S.C.A. § 1331.

Joseph F. Bartley, Jr., of Bartley & Bartley, Peoria, Ill., Farabaugh, Chapleau & Roper, by Joseph A. Roper, South Bend, Ind., for plaintiff.

Kavanagh, McLaughlin & Bond, Peoria, Ill., for defendants.

MERCER, District Judge.

The complaint herein alleges that on the 27th day of April, 1956 the United States of America acting through the Corps of Engineers, United States Army, Chicago District, and the defendant, M. Vander Heyden, d/b/a Dyer Construction Company, entered into a written contract for the enlargement and improvement of the Greater Peoria Airport, Peoria, Illinois; that the defendant, under the terms of such contract, agreed to furnish the labor and materials and perform all work. That pursuant to the Act of Congress the defendant, M. Vander Heyden, d/b/a Dyer Construction Company, as Principal, and the defendant, United States Fidelity and Guaranty Company, as Surety, bound themselves, jointly and severally, in the sum of $933,926.52. Conditioned that if Principal shall promptly make payments to all persons, supply labor and materials in the prosecution of the work provided for in such contract, and any and all duly authorized modifications that may be made, then this obligation should be void, otherwise to remain in full force and effect; that such bond was duly accepted by the United States of America and upon such acceptance the work under such contract was undertaken and begun by the defendant, M. Vander Heyden, d/b/a Dyer Construction Company.

On May 15, 1956 the use plaintiff, Armco Drainage and Metal Products, Inc. (hereafter referred to as 'Armco') and the defendant Vander Heyden, entered into a subcontract under the provisions of which Armco agreed to furnish all materials, direct supervision, labor and equipment, to erect at such Greater Peoria Airport, Peoria, Illinois, 1,515 feet of multi-plate pipe for the contract price of $166,983.30. Complaint further alleges that the materials and services called for by such contract were furnished and performed for such project. That on October 12, 1956, work, materials and services called for by such subcontract were fully and finally performed by Armco and that on said date the defendant, Vander Heyden, executed its written acknowledgment to the effect that the work called for by such subcontract and performed by the use plaintiff, had been inspected and had been found complete and satisfactory; that there remains due and owing and unpaid on

such subcontract the total sum of $107,-703.90 which defendants refuse to pay. Plaintiff demands judgment against the defendants in the sum of $107,703.90, with interest.

The defendant, United States Fidelity and Guaranty Company, has filed its answer herein and the defendant, M. Vander Heyden, d/b/a Dyer Construction Company, has filed its answer and has also filed a Counterclaim seeking damages for alleged negligent acts asserted against the counterdefendant Armco. Armco has filed a motion to dismiss the counterclaim.

The question involved herein requires the construction by the Court of the subcontract between counterclaimant and Armco and particularly the conditions in said contract as they appear on the reverse side thereof.

The subcontract calls for the furnishing by Armco of material and direct supervision, labor and equipment to erect 1,515 feet of multi-plate pipe 5% elliptical, 108 inches in diameter per plans and specifications. Others than Armco shall furnish line and grade stakes, provide and maintain an access road and reasonably level working area adjacent to the ditch, do all excavating and provide and place all subgrade and back fill material. The applicable condition in the contract provides as follows: "The Company's (meaning Armco) liability hereunder shall be limited to the obligation to replace any work or material proven to have been defective in quality or workmanship at the time of completion or delivery or allow credit therefor at its option. In no event shall the Company be liable for consequential damages or for claims other than as aforesaid."

In construing the contract the Court is of the opinion that Armco was obliged to furnish the pipe called for and obliged to erect the pipe. The contract contemplated more than the furnishing of the material. The condition above referred to is a responsibility limitation provision and is not limited to the quality and workmanship of the furnished article, but applies as well to the work of Armco in erecting such pipe on the established grade. It would appear to be arbitrary to hold that the words "any work or material" should be restricted in its application to the furnished product and held inapplicable to the erection of the pipe when such erection is as much a part of the contract as the furnishing of the pipe. The counterclaim alleges that counterdefendant negligently connected pipe to excessive length in the process of erection and alleges a negligent failure to remove plates in the process of erecting causing excessive extension of pipe to become filled with water during a heavy rainstorm, causing flotation and causing much of the back fill to be lost, all of which required a relaying of said pipe and replacing of said back fill. It is the opinion of the Court that the parties contracted to limit Armco's liability, both in contract and in tort, to the replacement of the furnished product or the installation thereof where either the work or material in connection with either the furnished product or the installation thereof was defective in quality or workmanship. The parties denoted an exclusive remedy in the event either defective work or material is involved in either the furnished product or the erection thereof.

The contract herein and the conditions which are a part of the contract do not violate any public policy. It is basic that parties may contract for an exclusive remedy which shall be binding on them. The parties can by express agreement limit their rights, duties and obligations under the contract and this has been done in this case. There is nothing in this case to suggest that the parties were not dealing at arms length and upon equal footing. The Illinois law on this phase of the case is set forth in Jackson v. First National Bank of Lake Forest, 415 Ill. 453, 114 N.E.2d 721, 39 A.L.R.2d 254.

The Court has considered the Illinois cases cited in counterclaimant's brief. These cases hold that the intention to exonerate from negligence must

be expressed in clear and unequivocal terms. However, the cases do not hold that in order for the intention to be unequivocal it is necessary that the word negligence be used. There are a number of cases where the language of the agreement was so broad as to indicate the intention of the parties that it should include negligence though the word negligence was not used. Russell for Use of Continental Casualty Co. v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415. See also, Chicago & N. W. R. Co. v. Chicago Packaged Fuel Co., 7 Cir., 183 F.2d 630; 175 A.L.R. 10, at page 30.

Another condition of this contract provides that "in no event shall the Company be liable for consequential damages." All of the alleged damages set forth in the counterclaim are consequential in nature. This is further reason to dismiss the counterclaim.

For the reasons assigned it is the Order of the Court that plaintiff and counterdefendant's motion to dismiss counterclaim be and the same is hereby allowed and said counterclaim is hereby dismissed.